# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Case No. 08-20577-TLM |
| LAVERL H. WILHELM, | ) | |
| fdba Porto Uniao, Pain Management | ) | Chapter 7 |
| Psychology, Injoy, Wilhelm Ranches, | ) | |
| Living Waters Coordinated | ) | |
| Communities, Porto Allegre, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | Case No. 08-02856-TLM |
| JONATHAN DAVID LENHART, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | Case No. 09-20024-TLM |
| DOUGLAS R. LAFORD, | ) | |
| dba The Offerman Auctions Services, | ) | Chapter 13 |
| fdba Showroom Cars Unlimited, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | Case No. 09-00124-TLM |
| TYLER K. CROFTS and | ) | |
| KODI C. CROFTS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

MEMORANDUM OF DECISION - 1

IN RE                                    )
                                         )        **Case No. 09-20400-TLM**
**REBECCA L. APPLEGATE,**                )
**fdba Affordable Elegance,**            )        **Chapter 7**
                                         )
                    **Debtor.**          )
_____          )

## MEMORANDUM OF DECISION
_____

## I.    INTRODUCTION

        In each of the above cases, parties claiming to be secured creditors

(collectively, "Movants") seek relief from the automatic stay.  According to

Movants, debtors have defaulted on their obligations under secured promissory

notes.

        Despite the similarities in the pending motions, the trustees have not

uniformly responded.  In *Applegate* and *Wilhelm*, trustee Ford Elsaesser objects to

the motions, asserting that Movants failed to show an interest in the promissory

notes at issue.[1]  In *Laford*, trustee C. Barry Zimmerman stipulated to stay relief.[2]

In *Lenhart*, trustee Richard Crawforth filed a notice of non-opposition.[3]  In *Crofts*,

trustee Jeremy Gugino remained silent.

        But despite the lack of opposition to many of the motions, the Court cannot

_____

        [1] *See Applegate* Doc. No. 16; *Wilhelm* Doc. No. 77.

        [2] *See Laford* Doc. No. 52.

        [3] *See Lenhart* Doc. No. 35.

MEMORANDUM OF DECISION - 2

simply grant relief on that basis.  Rather, the Court must first satisfy itself that relief is proper.  *See, e.g., In re Millspaugh*, 04.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003); *In re Lancaster*, 03.1 I.B.C.R. 31, 32 (Bankr. D. Idaho 2003) (lack of opposition "does not absolve the Court of its responsibility to ensure that relief may properly be entered").  As explained below, the Court will deny all these motions because the Movants have failed to show they have standing to seek stay relief.

Before delving into the specifics of these cases, it is worth reiterating that changes in mortgage practices during the past several years – including, most prominently, the serial assignment of mortgage obligations – have complicated the factual situations to which the standing analysis applicable to stay relief motions must be applied.  *See In re Sheridan*, 09.1 I.B.C.R. 24, 24, 2009 WL 631355, at *1 (Bankr. D. Idaho 2009).  Several bankruptcy courts –  including this Court, in *In re Sheridan* – have been required to issue decisions explaining who does (and who does not) have standing to seek stay relief.  *See, e.g., In re Jacobson*, 402 B.R. 359, 365-67 (Bankr. W.D. Wash. 2009); *In re Vargas*, 396 B.R. 511, 520-21 (Bankr. C.D. Cal. 2008); *In re Hwang*, 396 B.R. 757, 765-69 (Bankr. C.D. Cal. 2008); *In re Mitchell*, 2009 WL 1044368, at *2-6 (Bankr. D. Nev. Mar. 31, 2009).

In *In re Sheridan*, for example, this Court explained that a stay relief motion "must be brought by one who has a pecuniary interest in the case and, in

MEMORANDUM OF DECISION - 3

connection with secured debts, by the entity that is entitled to payment from the debtor and to enforce security for such payment."  09.1 I.B.C.R. at 25, 2009 WL 631355, at *4.  In hundreds of stay relief motions, including many post-*Sheridan*, creditors are providing adequate documentation and explanation to meet the requisite standing requirements.  These Movants, all of whom are represented by attorney Matthew Cleverly ("Counsel"), are an exception.

## II.    BACKGROUND

Each Movant submitted various documents in support of its motion, including promissory notes, deeds of trust, declarations, and (in four of the five cases) assignment documents.  Section II.A., below, sets forth the particulars of each promissory note at issue and identifies the Movant seeking to enforce the note.  Section II.B. discusses factual and procedural issues common to all cases.

### A.    The promissory notes and the Movants[4]

#### 1.    *In re Applegate*, Case No. 09-20400-TLM

In *In re Applegate*, "Indymac Federal Bank, FSB, [and] its assignees and/or successors" seek stay relief relating to real property located in Hayden, Idaho and owned by debtor Rebecca Applegate.  *Applegate* Doc. No. 14.  The property is

---

[4]  For ease of reference, the cases are listed in alphabetical order.  In many of these cases, Counsel did not number exhibits to the motions, but instead named them.  For example, a promissory note is identified as "Exhibit Note" and a deed of trust as "Exhibit Deed of Trust."  *See, e.g., Applegate* Doc. No. 14.  The Court's electronic filing system assigns "parts" to these filings.  For example, if the first document appended to a motion was the deed of trust, the motion appears as part 1, and the deed of trust appears as part 2.  For convenience, this Decision cites the motion exhibits by part, rather than by exhibit name.

MEMORANDUM OF DECISION - 4

security for an August 29, 2005 secured promissory note in the principal amount of $208,900. *Id.,* part 2. The payee on the note is Land Home Financial Services. *Id.*

## 2.    *In re Crofts*, Case No. 09-00124-TLM

In *In re Crofts*, JPMorgan Chase Bank, National Association and its assignees and/or successors ("JPMorgan Chase") seek stay relief relating to real property located in Nampa, Idaho and owned by Tyler and Kodi Crofts. *Crofts* Doc. No. 21.[5] In the motion, JPMorgan Chase indicates that the debt was incurred on August 9, 2006. *Id.* ¶¶ 3-4. Similarly, the deed of trust referred to an August 9, 2006 note, and further indicated that the principal amount of the note is $32,000, and that the payee is Aegis Wholesale Corporation. *See Crofts* Doc. No. 21, part 4 (deed of trust).

The note filed with the motion, however, is dated October 24, 2005, the principal amount is $28,540, and the payee is M&T Mortgage Corporation. *See Crofts* Doc. No. 21, part 5 (note and addendum). Thus, in this case, it is unclear which note JPMorgan Chase seeks to enforce.

## 3.    *In re Laford*, Case No. 09-20024-TLM

In *In re Laford*, two motions for stay relief, pertaining to two separate notes,

---

[5]   The motion at issue was filed on March 17, 2009. *See Crofts* Doc. No. 21. A second motion relating to this property was filed on March 20, 2009. *See Crofts* Doc. No. 24. Although the second motion suffers from many of the same defects discussed later in this Decision, the Court entered an order granting the motion. *See Crofts* Doc. No. 35. This order was an error, but will stand.

MEMORANDUM OF DECISION - 5

were filed by JPMorgan Chase Bank, NA, on behalf of "Bank of America, as

successor by merger to LaSalle Bank, NA, as trustee for Washington Mutual

Asset-Backed Certificates, WMABS Series 2007-HE2 Trust [and its assignees

and/or successors. "[6] (This Movant is individually referred to as "Bank of

America").  *See Laford* Doc. No. 46 (motion related to first deed of trust); *Laford*

Doc. No. 48 (motion related to second deed of trust).

   Bank of America seeks stay relief in order relating to real property located

in Lewiston, Idaho and owned by debtor Douglas Laford.  Although each motion

presumably relates to just one note, Bank of America submitted two notes with

each motion.  Both notes are dated November 15, 2006, and are payable to WMC

Mortgage Corp.  One note is in the principal amount of $108,240, while the other

shows a principal amount of $27,060.  *Laford* Doc. No. 46, part 4; *Laford* Doc.

No. 48, part 3.

   It appears that the $108,240 note is secured by a first deed of trust, and the

$27,060 note is secured by a second deed of trust.  *See Laford* Doc. No. 46, part 3

(deed of trust related to the $108,240 note); and Doc. No. 48, part 2 (deed of trust

related to the $27,060 note).  *See also Laford* Doc. No. 68 (unrecorded assignment

---

   [6]  The Court notes that some of the motions within this group are brought by loan
servicers.  *See Laford* Doc. Nos. 46 and 48; *Lenhart* Doc. No. 13.  The Court does not need to
decide any "loan servicer" issues, however (including, for example, whether these servicers have
established authority to enforce the obligations at issue) as it is denying the motions for other
reasons.

MEMORANDUM OF DECISION - 6

referring to the first deed of trust); *Laford* Doc. No. 69 (unrecorded assignment relating to the second deed of trust).

### 4.    *In re Lenhart*, Case No. 08-02856-TLM

In *In re Lenhart*, Ocwen Loan Servicing, on behalf of "HSBC Bank USA, N.A., as Trustee for the registered holders of Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2007-2, [and] its assignees and/or successors" seeks stay relief relating to real property located in Middleton, Idaho and owned by debtor Jonathan Lenhart and non-debtor Maricruz Lenhart. *See Lenhart* Doc. Nos. 13, 21.[7]  (This Movant is referred to as "HSBC").  The property is security for an October 31, 2006 secured promissory note in the principal amount of $180,800. The payee on the note is Ownit Mortgage Solutions. *Lenhart* Doc. No. 13, part 3; *Lenhart* Doc. No. 21.

### 5.    *In re Wilhelm*, Case No. 08-20577-TLM

In *In re Wilhelm*, "Aurora Loan Services, LLC, [and] its assignees and/or successors" (referred to herein as "Aurora") seeks stay relief relating to real property located in Coeur D'Alene and owned by debtor Laverl Wilhelm. *Wilhelm* Doc. No. 75.  The property is security for an August 25, 2005 secured promissory note in the principal amount of $154,400. *Id.*, part 2.  The payee on the note is

---

[7]  HSBC filed its motion on January 9, 2009, but included only one page of the note at issue. *See Lenhart* Doc. No. 13, part 3.  On February 12, 2009, HSBC filed an addendum containing what appears to be a complete copy of a note. *See Lenhart* Doc. No. 21.

MEMORANDUM OF DECISION - 7

Plaza Home Mortgage, Inc. *Id.*

### B. Factual issues common to all cases

Factual issues common to all or most of the cases include the following:

First, as already noted, none of the relevant notes names a Movant as the payee.

Second, none of the notes is indorsed, either in blank or to any specific person or entity.[8]

Third, neither the motions nor the supporting declarations establish that Movants possess the notes they seek to enforce.[9]

Fourth, each deed of trust names Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary under the deed of trust, clarifying, however, that MERS is acting "solely as a nominee for Lender and Lender's successors and assigns." Each deed also states that MERS holds "only legal title" to the deed of trust, but it may foreclose and sell the property, among other things, "if necessary to comply with law or custom."

These deeds do not state that MERS is authorized to transfer the promissory

---

[8] *See Applegate* Doc. No. 14, part 2; *Crofts* Doc. No. 21, part 5; *Laford* Doc. No. 46, part 4; *Laford* Doc. No. 48, part 3; *Lenhart* Doc. No. 13, part 3; *Lenhart* Doc. 21; *Wilhelm* Doc. No. 75, part 2.

[9] *See Applegate* Doc. No. 18*; Crofts* Doc. No. 28; *Laford* Doc. No. 55, 57; *Lenhart* Doc. No. 16; *Wilhelm* Doc. No. 78.

MEMORANDUM OF DECISION - 8

notes.[10]  Nevertheless, in four of the five cases, Movant submitted an assignment in which MERS purports to assign to Movant the relevant deed of trust "together with" the corresponding secured promissory note.[11]

## III.    DISCUSSION AND DISPOSITION

### A.    Real Party in Interest and Standing

To obtain stay relief, each Movant must have standing, and be the real party in interest under Federal Rule of Civil Procedure 17.[12]  *See, e.g., In re Sheridan,*

---

[10]  *See Applegate* Doc. No. 14, part 3, at 1-3; *Crofts* Doc. No. 21, part 4 at 2-3; *Laford* Doc. No. 46, part 3 at 1-3; *Laford* Doc. No. 48, part 2 at 1-2; *Lenhart* Doc. No. 13, part 4 at 1-3; *Wilhelm* Doc. No. 75, part 3 at 1-3.

The relevant language regarding MERS is as follows:  Initially, the deeds state:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

*E.g., Wilhelm* Doc. No. 75, part 3 at 2.  The deeds then typically provide that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* at 3.

[11]  *See Applegate Doc.* No. 14, part 4; *Crofts* Doc. No. 34; *Laford* Doc. Nos. 68 and 69; *Wilhelm* Doc. No. 75, part 4.

[12]  Federal Rule of Civil Procedure 17(a)(1) provides:

> An action must be prosecuted in the name of the  real party in interest.  The following may sue in their own names without joining the person for whose
>
> (continued...)

MEMORANDUM OF DECISION - 9

09.1 I.B.C.R. at 25, 2009 WL 631355, at *4; *In re Mitchell*, 2009 WL 1044368, at

*2.

Standing and the real-party-in-interest requirement are related, but not

identical, concepts.  Standing encompasses both constitutional and prudential

elements.  *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498-99 (1975); *In re Simplot*,

2007 WL 2479664, at *9 (Bankr. D. Idaho. Aug. 28, 2007).  To have constitutional

standing, the litigant must allege an "injury that is concrete, particularized, and

actual or imminent; fairly traceable to the defendant's challenged behavior; and

likely to be redressed by a favorable ruling."  *Davis v. Fed. Election Comm'n*, __

U.S. __, 128 S. Ct. 2759, 2768 (2008).  Prudential standing includes the idea that

the injured party must assert its own claims, rather than another's.  *See, e.g.,*

*Warth*, 422 U.S. at 499.  Thus, the real-party-in-interest doctrine generally falls

within the prudential standing doctrine.  *See Hwang*, 396 B.R. at 769.  That is, as

"a prudential matter, a plaintiff must assert 'his own legal interests as the real party

in interest, *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004), as

found in Fed. R. Civ. P. 17[.]'"  *Mitchell*, 2009 WL 1044368, at *2.

---

[12] (...continued)
benefit the action is brought:  (A) an executor; (B) an administrator; (C) a
guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with
whom or in whose name a contract has been made for another's benefit; and
(G) a party authorized by statute.

(internal paragraphs between lettered paragraphs omitted).

MEMORANDUM OF DECISION - 10

Applying these principles in the § 362 stay relief context, each Movant must show that it has an interest in the relevant note, and that it has been injured by debtor's conduct (presumably through a default on the note). Such is necessary to establish constitutional standing. *Cf. In re Hayes*, 393 B.R. 259, 268-70 (Bankr. D. Mass. 2008) (movant lacked standing altogether as it failed to show the note was transferred to it, and thus had no rights of its own to assert). Beyond that, Movants must also show they have the right, under applicable substantive law, to enforce the notes. As explained by one court, the "real party in interest in relief from stay is whoever is entitled to enforce the obligation sought to be enforced." *Jacobson*, 402 B.R. at 366; *see also id.* at 367 ("Generally, a party without the legal right under applicable substantive law to enforce the obligation at issue . . . lacks prudential standing."); *In re Sheridan*, 09.1 I.B.C.R. at 25, 2009 WL 631355, at *4. In other words, Movants must also satisfy the prudential, real-party-in-interest standing component.

Under these principles, there are two threshold questions in each of these motions: (1) Have Movants established an interest in the notes? (2) Are Movants entitled to enforce the notes? The answer to both these questions is no, as set forth in the remainder of this Decision. Before resolving these questions, however, the Court will address two preliminary arguments raised by Movants Bank of America

MEMORANDUM OF DECISION - 11

and HSBC Bank.[13]

### B.   Bank of America/HSBC's arguments regarding standing and real-party-in-interest requirements

Movants Bank of America/HSBC contend that stay relief motions need not be pursued by a real party in interest, as required by Federal Rule of Civil Procedure 17.  Bank of America/HSBC also argue they do not have the burden of proving standing to obtain stay relief.  *See Laford* Doc. Nos. 72 and 73; *Lenhart* Doc. No. 38.  Both contentions lack merit.

As to the real-party-in-interest argument, this Court recently held that motions brought under § 362(g) are subject to Federal Rule of Civil Procedure 17's requirement that actions be prosecuted in the name of the real party in interest.  *In re Sheridan*, 09.1 I.B.C.R. at 25, 2009 WL 631355, at *3.  As explained in *Sheridan*:

> Under Rule 9014, which by virtue of Rule 4001(a)(1) governs stay relief requests, certain "Part VII" rules are applicable.  *See* Rule 9014(c).  Among these incorporated rules is Rule 7017, which in turn incorporates Fed. R. Civ. P. 17, and Rule 17(a)(1) provides that "An action must be prosecuted in the name of the real party in interest."

*Id.; see also In re Hwang*, 396 B.R. at 766.  Bank of America/HSBC have provided no persuasive authorities or arguments to the contrary.

Bank of America/HSBC's next argument, regarding standing, has two basic

---

[13]   For some reason, not all of Counsel's clients made these arguments.  Accordingly, and for ease of reference, the Court refers to these two entities as "Bank of America/HSBC" in the following section, III.B.  The same analysis would apply, however, to the other Movants.

MEMORANDUM OF DECISION - 12

parts.  First, they argue that standing may be established solely by the allegations

in their stay relief motions.  *See Laford* Doc. No. 72, at 2, 7.  Second, they argue

that if a party challenges standing, the burden falls upon that party to disprove

standing.  As Bank of America/HSBC put it:

> Congress specifically shifted the burden of proof in stay relief motions.
> The moving party has the burden of proving lack of equity in the
> property.  The party opposing the stay relief motion has the burden to
> *disprove* everything else, including the creditor's standing.

*Id.* at 4.

These arguments reflect a misunderstanding of the standing doctrine in

general as well as the burden of proof  (as distinct from the burden of persuasion)

applicable to stay relief motions.

Regarding standing in general, Bank of America/HSBC initially fail to

recognize that this Court may raise standing issues *sua sponte*.[14]  Similarly, they

fail to acknowledge that a party seeking to invoke a federal court's jurisdiction

must prove its standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992).  This obligation exists separate and apart from other elements of a

plaintiff's claim.  *See id.*  As the Supreme Court explained, because elements of

standing

---

[14] *See, e.g., Warth,* 422 U.S. 490*; B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260,
1264 (9th Cir. 1999) ("federal courts are required sua sponte to examine jurisdictional issues such
as standing"); *Hwang*, 396 B.R. at 770 (overruling objection to court's *sua sponte* consideration
of whether movant was real party in interest in a stay relief motion) (citing *Weissman v. Weener*,
12 F.3d 84, 85-86 (7th Cir. 1993)).

MEMORANDUM OF DECISION - 13

are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Id.*

As applied in the stay relief context, movants bear the burden of proof on standing, in addition to the other elements necessary to obtain relief. *Cf., e.g., In re Hayes*, 393 B.R. at 267 ("To have standing to seek relief from the automatic stay, [movant] Deutsche Bank was required to establish that it is a party in interest and that its rights are not those of another entity.").

As for the proof required to demonstrate standing, it depends upon the stage of the proceedings. At the pleading stage, plaintiffs in federal court may rely on the allegations of their complaint to establish standing. *Lujan*, 504 U.S. at 561. Similarly, stay relief movants may initially rely upon their motion. But if a trustee or debtor objects to a stay relief motion based upon lack of standing, the movant must come forward with evidence. Additionally, if the stay relief motion itself reveals a lack of standing, movants cannot rest on the pleadings. *See, e.g., Sprewell v. Golden State Warriors,* 266 F.3d 979, 988-89, *amended on denial of pet'n for reh'g*, 275 F.3d 1187 (9th Cir. 2001) (plaintiff "plead himself out of a claim" because allegations in the complaint were contradicted by uncontested facts set forth in an arbitration award appended to the complaint).

MEMORANDUM OF DECISION - 14

Here, even accepting Bank of America/HSBC's contention that the Court is limited to considering the allegations in the motions, these allegations are insufficient to establish standing. Among other things, the narrative allegations are contradicted by the exhibits to the motions.[15] Moreover, Bank of America/HSBC did not cure the standing issues with the declarations submitted in support of their motions, as these declarations fail to comply with basic evidentiary rules.[16] In short, as discussed further below, standing has not been properly alleged, much less proved.

Finally, it is worth noting that Bank of America/HSBC's misconceptions regarding the burden of proof on the standing issue reflect a larger misunderstanding regarding stay relief motions. As Bank of America/HSBC correctly point out, § 362(g) imposes upon the party opposing stay relief the burden of proof on all issues – other than the existence of the debtor's equity in the collateral. *See generally* 3 *Collier on Bankruptcy* ¶ 362.10 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009). But § 362(g) "does not address the

---

[15]  Local Bankruptcy Rule 4001.2(b)(5) requires movants to attach to stay relief motions "accurate and legible copies of all documents evidencing the obligation and the basis of perfection of any lien or security interest."

[16]  Although Bank of America/HSBC argue they are entitled to rest upon the allegations in their motions, they also submitted declarations in an effort to establish standing. *See, e.g., Laford* Doc. No. 72, at 7 (under the heading "*Evidence Before the Court*," Bank of America argues that the Court has before it both the "Motion . . . whereby Secured Creditor alleges its interest in the Property" and "a Declaration under penalty of perjury that it holds the original promissory note and is entitled to payment on the loan").

MEMORANDUM OF DECISION - 15

burden of going forward with evidence, which is generally placed upon the party

seeking relief." *Id.* As explained in *In re Kowalsky*, 235 B.R. 590, 594 (Bankr.

E.D. Tex. 1999), "the party requesting relief from the stay must sustain the initial

burden of production or going forward with the evidence to establish that a *prima*

*facie* case for relief exists before the respondent is obligated to go forward with its

proof." *Accord In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y.1994)

("[A] party can bear the initial burden of going forward even if it does not bear the

ultimate burden of persuasion. If it fails to carry its initial burden, the Court will

dismiss its application without requiring the party that bears the ultimate burden of

persuasion to offer any evidence."). So it is here. To make out a *prima facie* case,

Bank of America/HSBC must demonstrate standing.

### C. Substantive law governing negotiable instruments

To resolve the standing and real-party-in-interest issues presented here, the

Court must determine who has the right to enforce the notes. Because bankruptcy

law does not provide for enforcement of promissory notes, the Court looks to

applicable non-bankruptcy law. *See generally Butner v. United States*, 440 U.S.

48, 54-55 (1979) (nature and extent of property interests in bankruptcy are

determined by applicable state law). Article 3 of Idaho's enactment of the

Uniform Commercial Code governs negotiable instruments. *See* Idaho Code § 28-

3-102(a); *id.* § 28-3-104(1) (defining negotiable instruments). Under Article 3,

MEMORANDUM OF DECISION - 16

persons entitled to enforce an instrument include: (1) a "holder of the instrument,"

and (2) "a nonholder in possession of the instrument who has the rights of a

holder[.]"  Idaho Code § 28-3-301(I), (ii).

To be the "holder" of an instrument one must possess the note *and* the note

must be payable to the person in possession of the note, or to bearer.  *See* Idaho

Code § 28-1-201(b)(21)(A).  The "holder" option is not available to Movants;

none of the notes is payable to the Movant and none of the notes has been

indorsed, either in blank or specifically to a Movant.  *See id.*; Idaho Code § 28-3-

205 (regarding special and blank indorsements).  Thus, the relevant inquiry in

these five cases is whether Movants are non-holders in possession with rights to

enforce.

A "nonholder in possession of the instrument who has the rights of a

holder," Idaho Code § 28-3-301(ii), includes persons who acquire physical

possession of an unindorsed note.  *See* Idaho Code § 28-3-203 (1), (2).[17]  As the

---

[17]   These sections provide as follows:

28-3-203.  Transfer of Instruments - Rights acquired by transfer.

(1)  An instrument is transferred when it is delivered by a person other than
its issuer for the purpose of giving to the person receiving delivery the right to
enforce the instrument.

(2)  Transfer of an instrument, whether or not the transfer is a negotiation,
vests in the transferee any rights of the transferor to enforce the instrument,
including any right as a holder in due course, but the transferee cannot acquire rights
of a holder in due course by a transfer, directly or indirectly, from a holder in due

(continued...)

MEMORANDUM OF DECISION - 17

statutory comments explain, however, such nonholders must "prove the

transaction" by which they acquired the note:

> If the transferee is not a holder because the transferor did not indorse,
> the transferee is nevertheless a person entitled to enforce the instrument
> under Section 3-301 if the transferor was a holder at the time of
> transfer. Although the transferee is not a holder, under subsection (b)
> [*sic*, (2)] the transferee obtained the rights of the transferor as holder.
> *Because the transferee's rights are derivative of the transferor's rights,*
> *those rights must be proved. Because the transferee is not a holder,*
> *there is no presumption under Section 3-308 that the transferee, by*
> *producing the instrument, is entitled to payment. The instrument, by its*
> *terms, is not payable to the transferee and the transferee must account*
> *for possession of the unindorsed instrument by proving the transaction*
> *through which the transferee acquired it.*

*Id.* cmt. 2 (emphasis added).

Importantly, however, if a person "proves the transaction" by which it

acquired the note, but fails to show possession, he or she cannot enforce the note.

*See generally* 11 Am. Jur. 2d *Bills and Notes* § 210 (2009) (discussing differences

between a "holder" of a note, and an "owner" of a note). Again, the statutory

comments explain:

> [A] person who has an ownership right in an instrument might not be
> the person entitled to enforce the instrument. For example, suppose X
> is the owner and holder of an instrument payable to X. X sells the
> instrument to Y but is unable to deliver immediate possession to Y.
> Instead, X signs a document conveying all of X's right, title and interest
> in the instrument to Y. Although the document may be effective to give
> Y a claim of ownership of the instrument, Y is not the person entitled

---

[17](...continued)
course if the transferee engaged in fraud or illegality affecting the instrument.

MEMORANDUM OF DECISION - 18

to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.

Idaho Code § 28-3-203, cmt. 1.

Here, Movants have not demonstrated possession of the notes. Nor have they proved any transaction by which they acquired ownership of the notes.

### 1.    Movants have not established possession of the notes

Turning first to possession, Movants presumably rely on the supporting declarations, because the motions themselves do not allege that Movants possess the notes. (Although the motions typically allege that Movants are the "holders" of the notes, the notes – filed as exhibits to the motion – defeat this allegation since, as already noted, the notes are not indorsed.)

The declarations parrot the motions, again stating that Movant is the "holder" of the original promissory note at issue.[18] But this statement is an inadmissible legal conclusion – and an impossible one at that, given the absence of indorsements – not a fact. As explained, "holder" is a defined term when dealing with negotiable instruments. To qualify as holders, these Movants must possess an indorsed note. *See* Idaho Code § 28-1-201(b)(21)(A). None of these notes is

---

[18] *See Applegate* Doc. No. 18 at 1-2 ("Secured Creditor is the holder [of] the Original Promissory Note dated 08/29/2005, in the principal amount of $208,900, which is secured by the Deed of Trust encumbering the Property."); *Crofts* Doc. No. 28 at 2 (similar); *Laford* Doc. No. 55 at 2 (similar); *Laford* Doc. No. 57 at 2 (similar); *Lenhart* Doc. No. 16 at 2 (similar); *Wilhelm* Doc. No. 78 at 1-2 (similar).

MEMORANDUM OF DECISION - 19

indorsed, either in blank or specifically, making it impossible for any of these Movants to be a "holder."[19]  The declarations are insufficient.  *See, e.g., Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008) (whether witness' testimony was lay or expert, court did not abuse discretion in excluding legal conclusion that defendant violated UCC).

Moreover, it is the Court's job (not the witnesses') to determine whether the relevant facts establish, as a matter of law, that Movants are holders.  The same proposition applies to the question of whether they are non-holders with rights of enforcement.  So what the Court needs to know is a fact:  Who has possession of the original notes?  None of the declarations answers that question.  *Accord Sheridan*, 09.1 I.B.C.R. at 26, 2009 WL 631355, at *5 (noting that the movant's submissions did not answer "the key question - Who was the holder of the Note at the time of the Motion?").

Finally, one of the declarations in this group particularly illustrates the haphazard nature in which these motions were filed and the declarations

---

[19]  The Court questions whether the declarants appreciated the legal significance of the term "holder" and meant to assert the legal conclusion, or whether they simply signed form declarations provided to them, presumably by Counsel.  Further, Movants cannot rely on these declarations to demonstrate that Movants are nonholders in possession of the notes, with rights to enforce.  *See* Idaho Code § 28-3-203, cmt. 2.  Not only do the declarations fail to actually state that Movants *possess* the notes, there is no foundation for any such statement.  *See generally* Fed. R. Evid. 602 (witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").  Nor is there foundation for the declaration testimony regarding Movants' purported ownership interest in the notes.  *See generally* Fed. R. Evid. 602, 803(6).

MEMORANDUM OF DECISION - 20

completed.  In support of the *Crofts* motion, a declarant swore, under penalty of

perjury, (1) that JPMorgan Chase "is the holder of the *original* Promissory Note

dated *08/09/2006,* in the principal amount of *$32,000.00*"; and (2) that a "true and

correct copy" of that note was attached to the declaration.  *Crofts* Doc. No. 28 ¶ 6

(emphasis added).

There may be some logical explanation for these discrepancies.  But the

Court will not simply assume that this Movant possesses the original note

The first problem with this statement is that no note was actually attached to

the declaration.  Even more troubling, however, is that the note submitted with the

underlying motion bears a different date and principal amount.  *See Crofts* Doc.

21, part 5 (October 24, 2005 note in the principal amount of $28,540).  Further,

although the declaration does not indicate the note's payee, the deed of trust filed

with the motion refers to a note payable to Aegis Wholesale Corporation, *Crofts*

Doc. No. 21, part 4, but the note filed with the motion is payable to M&T

Mortgage Corporation.  *See* Doc. No. 21, part 5.

There may be some logical explanation for these discrepancies.  But the

Court will not simply assume that this Movant possesses the original note

referenced in the motion.[20]  The Court will require compliance with Local

---

[20]   Relatedly, the Court notes that Movants' submissions in many of these cases were filed helter-skelter.  Documents supporting the motions were typically filed piecemeal, with supplements abounding.  Such filings make the Court's work more time-consuming and difficult.  Counsel compounded this difficulty by sometimes filing pleadings and documents that obviously had nothing to do with the case at issue.  *See Crofts* Doc. No. 27; *Laford* Doc. Nos. 56, 67.  The Court is tolerant of an occasional clerical mistake or supplemental filing.  But sloppiness pervaded this group of motions.  The Court reasonably should expect better, and the governing
(continued...)

MEMORANDUM OF DECISION - 21

Bankruptcy Rule 4001.2, which requires, among other things, copies of "all documents evidencing the obligation and the basis of perfection of any lien or security interest." *Accord Sheridan*, 09.1 I.B.C.R. at 26, 2009 WL 631355, at *5.

In conclusion, Movants have failed to establish they possess the notes at issue. For this reason alone, the Court can, and will, deny their motions.

### 2.    Nor have Movants established any transaction by which they acquired possession of the notes

Even if Movants had established possession, they still cannot enforce the notes because they have not shown any transaction by which they acquired possession of the notes. *See* Idaho Code § 28-3-203(2), cmt. 2 (quoted earlier).

In four of the five cases, Movants apparently rely upon an assignment document to show that the notes were transferred to them.[21] The signature block in

---

[20] (...continued)
rules demand it. In general, counsel should gather the appropriate documents and factual data *before* filing the motions (as required by Rule 9011 in any event), rather than attempting to cure patently defective motions with serial supplemental filings. It is true that at one hearing, Counsel apologized for pleadings being filed in the wrong cases, or in the right case but with the wrong document attached. He offered that the matter was caused by inadequately trained or supervised clerical staff. As every lawyer knows, the buck stops elsewhere.

[21] *See Applegate* Doc. No. 14, part 4 (Dec. 23, 2008 assignment); *Crofts* Doc. Nos. 34 (unrecorded May 5, 2009 assignment); *Laford* Doc. Nos. 68 (unrecorded May 5, 2009 assignment); *Laford* Doc. No. 69 (unrecorded May 5, 2009 assignment); *Wilhelm* Doc. No. 75, part 4 (unrecorded Apr. 29, 2009 assignment).

The Court here looks to the assignments, because Movants cannot rely upon the declarations to establish the transfer. Among other things, the declarations lack foundation, either to authenticate the documents (none of which are self-authenticating under Federal Rule of Evidence 902(4)) or to establish that Movants purchased the notes at issue. *See* Fed. R. Evid. 602; *In re Mitchell*, 2009 WL 1044368, at *6 (discussing evidentiary problems with declarations
(continued...)

MEMORANDUM OF DECISION - 22

these assignments typically indicate that MERS executed the assignments on behalf of the original lender and that lender's successors and assigns.[22]  Movants seem to presume that the assignments, standing alone, entitle them to enforce the underlying notes. Such a presumption is unfounded, however, because Movants have not established MERS's authority to transfer the notes at issue.  As noted above, the relevant deeds of trust name MERS as the "nominal beneficiary" for the lender.  Further, MERS is granted authority to foreclose if required by "custom or law."  But what this language does not do – either expressly or by implication – is authorize MERS to transfer the promissory notes at issue.

At least two other courts construing similar MERS assignments are in accord.  *See Saxon Mortgage Servs. v. Hillery*, 2008 WL 5170180, at *5 (N.D. Cal. Dec. 9, 2008); *Bellistri v. Ocwen Loan Servicing, LLC*, ___ S.W.3d ___, 2009 WL 531057, at *3 (Mo. Ct. App. Mar. 3, 2009).  *Cf. also In re Vargas*, 396 B.R. at 517 ("MERS presents no evidence as to who owns the note, *or of any authorization to act on behalf of the present owner.*") (emphasis added).

In *Saxon*, a lender purported to hold the promissory note and deed of trust at

---

[21] (...continued)
supporting stay relief motions).

[22]  The *Applegate* assignment is the exception. There, MERS did not even purport to act for the original lender, as it did in the other assignments.  Rather, in the *Applegate* assignment, MERS purports to act for "*its* [own] successors and assigns . . . ."  *Applegate* Doc. No. 14, part 4 (emphasis added).

MEMORANDUM OF DECISION - 23

issue by virtue of a MERS assignment similar to the ones here. 2008 WL

5170180, at *1, 4-5. The district court dismissed the complaint for lack of

standing, observing that although MERS purportedly assigned both the deed of

trust and the promissory note to plaintiff Consumer, "there is no evidence of record

that establishes that MERS either held the promissory note or was given the

authority by New Century [the original lender] to assign the note." *Id.* at *5.

In *Bellistri,* third party Crouther purchased property and executed a

promissory note and deed of trust. 2009 WL 531057, at *1. BNC was the lender

and payee on the note, while the deed of trust named MERS as the beneficiary

"solely as BNC's nominee." *Id.* After Crouther failed to pay taxes on the

property, Bellistri purchased the property at a delinquent tax sale and was issued a

collector's deed. *Id.* After this deed was issued, MERS, as nominee for BNC,

assigned the deed of trust and note to Ocwen Loan Servicing, LLC. *Id.*

The Missouri Court of Appeals affirmed the trial court's summary judgment

in Bellistri's favor, holding that Ocwen lacked standing. As the court explained:

> The record reflects that BNC was the holder of the promissory note.
> There is no evidence in the record or the pleadings that MERS held the
> promissory note or that BNC gave MERS the authority to transfer the
> promissory note. MERS could not transfer the promissory note;
> therefore the language in the assignment of the deed of trust purporting
> to transfer promissory note is ineffective.

*Id.* at *3.

As in *Saxon* and *Bellistri*, Movants cannot rely on the MERS assignments

MEMORANDUM OF DECISION - 24

to establish an interest in the notes.  Because Movants failed to establish

possession of and an ownership interest in the notes, they are not shown to be the

real party in interest, and they lack standing to bring the motions.

## IV.    CONCLUSION

Movants lack standing to seek stay relief.  The objections to the *Laford* and

*Lenhart* Motions will be sustained, and all pending motions will be denied without

prejudice.  The Court will issue an Order so providing.

DATED: July 7, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 25

## <u>CERTIFICATE OF SERVICE</u>

A notice of entry of the July 7, 2009 Memorandum of Decision and the related, July 7, 2009, Order on Motion for Relief from Stay has been served on Registered Participants as reflected by the Notice of Electronic Filing.  Copies of the Decision and Order have also been provided to non-registered participants by first class mail addressed to:

Jonathan David Lenhart
923 9th St. South
Nampa, Idaho 83651

Case No. 08-02856-TLM

Dated: July 7, 2009

_____/s/_____
Marci Smith
Law Clerk to Chief Judge Myers

MEMORANDUM OF DECISION - 26